IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DARNELL GILBERT,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-20-3465 |
| **DOLGENCORP, LLC,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On June 13, 2019, Plaintiff Darnell Gilbert ("Plaintiff" or "Gilbert") was sexually assaulted by an individual posing as a security officer at a Dollar General store in Baltimore, Maryland. (ECF No. 2 ¶¶ 6, 10, 15.) On October 15, 2020, Gilbert brought suit against Dolgencorp, LLC d/b/a Dollar General ("Dolgencorp"), incorporated in the State of Kentucky, as well as against the owners of the premises occupied by Dolgencorp at the time of the assault, Red Leaf Associates Limited Partnership I ("Red Leaf") and Red Leaf Development and Investment Associates, Inc. ("Red Leaf Development") (collectively, the "Red Leaf Defendants"). (*Id.* ¶¶ 3-4, 6.) The action was filed in the Circuit Court for Baltimore City, Maryland and asserts two claims under Maryland law. Plaintiff Gilbert is a resident of Maryland (*id.* ¶ 1), Red Leaf Development is incorporated in the State of Maryland (*id.* ¶ 2), and Red Leaf is a limited partnership registered in Maryland and doing business in Baltimore City (*id.* ¶ 3). Nevertheless, the Red Leaf Defendants removed Gilbert's case to this Court on November 30, 2020 on the basis of 28 U.S.C. § 1441 and this Court's diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1.) That same day, the Red Leaf Defendants filed a Motion

to Dismiss for Fraudulent Joinder (ECF No. 7), in which they assert that the Plaintiff presents no viable or cognizable claim against them, and that the doctrine of fraudulent joinder[1] bars their continued participation in this matter. (ECF No. 7-1 at 1.) They assert that the matter should proceed in this Court solely against Defendant Dolgencorp, incorporated in the State of Kentucky. (*Id.*)

The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Red Leaf Defendants do not satisfy the heavy burden of fraudulent joinder, and their Motion to Dismiss for Fraudulent Joinder (ECF No. 7) is DENIED. As the Plaintiff asserts only state law claims, this Court retains subject matter jurisdiction solely through diversity jurisdiction under 28 U.S.C. § 1332, and the presence of the non-diverse Red Leaf Defendants destroys the complete diversity requirement of 28 U.S.C. § 1332. This action is accordingly REMANDED to the Circuit Court for Baltimore City, Maryland.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiff Gilbert is a resident of Baltimore City, Maryland. (ECF No. 2 ¶ 1.) Red Leaf Development is a corporation organized under the

---

[1] The term fraudulent joinder "does not reflect on the integrity of plaintiff or counsel. It is 'merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if there is *no real intention to get a joint judgment, and . . . there is no colorable ground for so claiming.*'" 2 William W. Schwarzer, A. Wallace Tashima, & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 2470 (2013) (quoting *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 904 F.2d 1000, 1003 (4th Cir. 1990) (emphasis added; internal quotes and parentheses omitted)).

laws of Maryland, doing business in Baltimore City.  (*Id.* ¶ 2.)  Red Leaf is a limited partnership registered in Maryland, doing business and owning real property in Baltimore City.  (*Id.* ¶ 3.)  Red Leaf Development is Red Leaf's general partner.  (*Id.*)  Dolgencorp is a limited liability company duly organized under the laws of Kentucky, doing business in Baltimore City.  (*Id.* ¶ 4.)

According to Plaintiff Gilbert, the Red Leaf Defendants and Dolgencorp "owned, operated, maintained, and/or managed" a retail store on Pennsylvania Avenue in the City of Baltimore, Maryland, operating under the name "Dollar General."  (*Id.* ¶ 76.)  Documents attached to the Red Leaf Defendants' Motion indicate that Red Leaf owns the relevant property, and on September 8, 2009, leased the property to Dolgencorp for a term of ten years.  (Exh. A., ECF No. 7-3 ¶¶ 1.1, 2.2.)  The lease agreement states that "upon the terms and conditions set forth" in the document, the property was leased "for the exclusive use of the Tenant for the term of the Lease."  (*Id.* ¶¶ 1.7, 1.10.)  The terms and conditions of the lease include certain tenant covenants.  Section 1.4 of the lease agreement states:

> Tenant covenants: (i) not to use the Premises for any illegal purpose, nor in such a manner as to violate any applicable and valid law, rule or regulation of any governmental body; (ii) to use the Premises in a careful, safe and proper manner; and (iii) not to permit waste thereon.  Otherwise, Tenant may use the Premises for any lawful retail purpose.

(*Id.* ¶ 1.4.)

In June of 2019, employees of the Dollar General store observed a man loitering in the store and "harassing customers."  (ECF No. 2 ¶ 8.)  The Plaintiff asserts that the individual represented to the Defendants' agents and/or employees that he was "soliciting their customers for an energy assistance program."  (*Id.*)  The Plaintiff also asserts that the three

Defendants were aware of the individual and were also aware that he was representing to customers that he was a security agent of the store and was wearing a uniform typical of a security officer. (*Id.* ¶ 12.) According to the Plaintiff, despite the Defendants' knowledge of the individual's presence on the property earlier in the week beginning June 10, 2019, no one took any action with respect to the individual. (*Id.* ¶ 8.) The Defendants did not call the police to report the individual's behavior or attempt to restrict his access to the store. (*Id.* ¶ 9.)

On June 13, 2019, Gilbert visited the Dollar General store during normal business hours to purchase some household items. (*Id.* ¶ 10.) While she was shopping, she was approached by the individual, who represented that he was the security officer employed by the store. (*Id.* ¶ 11.) The man stated to the Plaintiff, "I'm security." (*Id.* ¶ 12.) Gilbert reports that she believed he was in fact a security officer of the store and that she proceeded to ask him where she could find a can opener. (*Id.* ¶ 13.) The individual did not answer her question and instead accused her of stealing from the store and demanding that she turn around and place her arms up. (*Id.* ¶¶ 14-15.) The individual then sexually assaulted her, groping her "breasts, buttocks, and vagina over her clothing during the search." (*Id.* ¶¶ 15-16.)

The individual next allegedly told Gilbert that he needed to conduct a strip search in the back of the store, behind a closed door. (*Id.* ¶ 17.) Gilbert requested that a female officer be present for any further searches, but the individual denied such a request and began to physically pull her to the back of the store. (*Id.* ¶¶ 18-19.) Gilbert managed to break free from the man's grip. (*Id.* ¶ 19.) She yelled for help and ran to the front of the store. (*Id.*) A real security officer standing at the front of the store informed Gilbert that the individual who searched her was not in fact a security guard. (*Id.* ¶¶ 19-20.) The individual approached Gilbert

4

and the real security officer and told them that the Plaintiff was "overreacting" and that he "couldn't resist." (*Id.* ¶ 21.) Gilbert asked the security officer to call the police, but the officer instead simply told the individual to leave. (*Id.*)

Plaintiff Gilbert alleges that she has suffered and continues to suffer from post-traumatic stress disorder, nightmares, panic attacks, bouts of crying, and severe anxiety as a result of the sexual assault she endured in the Dollar General store. (*Id.* ¶¶ 22.) She filed suit against Dolgencorp and the Red Leaf Defendants in the Circuit Court for Baltimore City on October 15, 2020, alleging negligence (Count I) and premises liability (Count II) against all three Defendants. (*Id.* ¶¶ 23-44.) On November 30, 2020, the Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1332. (ECF No. 1.) That same day, the Red Leaf Defendants filed a Motion to Dismiss for Fraudulent Joinder asserting that the Plaintiff has no valid claim against them under Maryland law. (ECF No. 7.) The Plaintiff responded on December 14, 2020, contending that she does in fact have a valid cause of action against the non-diverse Red Leaf Defendants and that this case must be remanded to the Circuit Court for Baltimore City. (ECF No. 11.)

## STANDARD OF REVIEW

A defendant in a state civil action may remove the case to federal court only if the federal court can exercise original jurisdiction over at least one of the asserted claims. 28 U.S.C. § 1441(a)-(c). Federal courts have original jurisdiction over two kinds of civil actions-those which are founded on a claim or right arising under the Constitution, treaties or laws of the United States, and those where the matter in controversy exceeds $75,000 and is between citizens of different States. U.S. Const. art. III, § 2; 28 U.S.C. §§ 1331, 1332(a) (2006). If a

civil action is not based on a question of federal law, then a federal court may only exercise original jurisdiction based on diversity of citizenship. The purpose of the diversity requirement "is to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants. The presence of parties from the same State on both sides of a case dispels this concern, eliminating a principal reason for conferring § 1332 jurisdiction over any of the claims in the action." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 553-54 (2005). As the Supreme Court has noted, "[i]ncomplete diversity destroys original jurisdiction with respect to all claims." *Id.* at 554.

Once an action is removed to federal court, the plaintiff may file a motion to remand the case to state court if jurisdiction is defective. 28 U.S.C. § 1447(c). Federal courts are obliged to carefully scrutinize challenges to jurisdictional authority and must "do more than simply point jurisdictional traffic in the direction of state courts." *17th Street Associates, LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 592 (E.D. Va. 2005). The federal remand statute provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . ." 28 U.S.C. § 1447(d). On a motion to remand, a court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Richardson v. Phillip Morris, Inc.*, 950 F. Supp. 700, 701-02 (D. Md. 1997) (citation omitted). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahy*, 29 F.3d at 151; *see also Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815-16 (4th Cir. 2004).

The "fraudulent joinder" doctrine "permits removal when a non-diverse party is (or has been) a defendant in the case." *Mayes v. Rapaport*, 198 F.3d 457, 461 (4th Cir. 1999) (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d

1284, 1287 (11th Cir. 1998)). "'[A] joinder is fraudulent if there is no real intention to get a joint judgment, and . . . there is no colorable ground for claiming so.'" 2 Schwarzer, *et al.*, *Federal Civil Procedure Before Trial* § 2470 (quoting *AIDS Counseling & Testing Ctrs.*, 904 F.2d at 1003). When a party argues that fraudulent joinder excuses the presence of non-diverse parties, he "bears a heavy burden." *Johnson v. American Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)). For the court to retain subject matter jurisdiction, the removing party "must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* In other words, the burden requires a showing of either "outright fraud in the plaintiff's pleading of jurisdictional facts" or that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993). Under the latter showing, the plaintiff's claim at issue "need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." *Id.* at 233. The United States Court of Appeals for the Fourth Circuit has explained, the "no possibility" standard "heavily favors the [plaintiff], who must show only a 'glimmer of hope' of succeeding against the non-diverse defendants." *Johnson*, 781 F.3d at 704 (quoting *Mayes*, 198 F.3d at 466).

**ANALYSIS**

As the asserted basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). To assert a claim for negligence under Maryland law, a plaintiff must allege: "'(1) that the defendant was

under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *Valentine v. On Target, Inc.*, 727 A.2d 947, 949 (Md. 1999) (quoting *BG & E v. Lane*, 656 A.2d 307, 311 (Md. 1995) (internal citation omitted)). "Premises liability is based on common-law principles of negligence . . . so a plaintiff must establish the four elements required in any negligence action" to prevail. *Macias v. Summit Mgmt., Inc.*, 220 A.3d 363, 375 (Md. 2019) (citing *Troxel v. Iguana Cantina, LLC*, 29 A.3d 1038, 1038 (Md. 2011)). Therefore, with respect to both counts of the Complaint, the Plaintiff must allege that the Defendants were under a duty to protect her from harm.

The Red Leaf Defendants contend that there is no valid cause of action against them under Maryland law because control of the Pennsylvania Avenue premises had been surrendered to Dolgencorp through execution of the lease, and, therefore, they had no duty to protect the Plaintiff from harm while at the Dollar General store. (ECF No. 7-1.) In *Henley v. Prince George's County,* a plaintiff brought a wrongful death suit against, among others, the college that owned the land where a murder occurred. 503 A.2d 1333 (Md. 1986). The Maryland Court of Appeals affirmed a finding of summary judgment in favor of the college, holding that "the uncontested facts demonstrated beyond dispute that the College had surrendered control of the premises to the County during the period of time involved in [the] action." *Id.* at 337. The Court of Appeals noted that lease of land is equivalent to a sale of the land for the term of the lease: "The lessee acquires an estate in the land, and becomes for the time being both owner and occupier, subject to all of the responsibilities of one in possession, to those who enter upon the land and those outside of its boundaries." *Id.* (quoting

*Prosser and Keeton on The Law of Torts* § 63, at 434 (W. Keeton 5th ed. 1984) (footnotes omitted)). As the Maryland Court of Appeals held in 1932, "[t]he law is well settled that, when the owner has parted with his control, the tenant has the burden of the proper keeping of the premises, in the absence of an agreement to the contrary." *Marshall v. Price*, 161 A. 172 (Md. 1932). Therefore, a landlord is "not ordinarily liable to a tenant or a guest of the tenant for injuries from a hazardous condition in the leased premises that comes into existence after the tenant has taken possession." *Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.*, 719 A.2d 119, 124 (Md. 1998) (citing *Marshall*, 161 A. 172).

Considering its well-settled principles of law regarding lessors and lessees, or landlords and tenants, the Maryland Court of Appeals clearly stated in *Matthews* that "this principle, that a landlord is not responsible for dangerous conditions in the leased premises, is not absolute and has exceptions." 719 A.2d at 124. As the Court explained, "[t]he principal rationale for the general rule that the landlord is not ordinarily liable for injuries caused by defects or dangerous conditions in the leased premises is that the landlord 'has parted with control.'" *Id.* at 125 (citing *Marshall*, 161 A. at 172). When landlords have been held liable for a defective or dangerous condition, it has been in circumstances where the landlord had an "ability to exercise a degree of control" over the condition and "to take steps to prevent injuries from arising therefrom." *Id.* (citing numerous examples). For example, in *Scott v. Watson*, the Court held that a landlord may be liable for "injuries sustained by tenants as a result of criminal acts committed by others in the common areas within the landlord's control." 359 A.2d 548, 552 (Md. 1976). This principle that the landlord may have a duty with respect to matters within

his control "extends beyond common areas; it may be applicable to conditions in the leased premises." *Matthews*, 719 A.2d at 125.

In *Matthews*, the Maryland Court of Appeals ultimately held that where a landlord retained control over "the presence of a dog in the leased premises by virtue of the 'no pets' clause in the lease," he could be held liable for the death of a child killed by an aggressive dog a tenant was keeping on the premises. *Id.* at 125-132. As the Court explained, the landlord was aware of the dog's presence on the property and he could have told the tenant to "get rid of the aggressive animal" and "threatened legal action" when he "first received notice of the dangerous incidents involving" the dog. *Id.* at 126. Yet, the landlord did nothing. *Id.* Under such circumstances, and under "the prior cases in [the Maryland Court of Appeals] emphasizing the factor of a landlord's control," the *Matthews* court held "it [was] not unreasonable to impose upon the landlord a duty owed to guests who are either on the leased premises or the common areas" in that case. *Id.* at 127. The Court was explicit that it was not holding "that a landlord's retention in the lease of some control over particular matters in the leased premises is, standing alone, a sufficient basis to impose a duty upon the landlord which is owed to a guest on the premises." *Id.* at 129. Instead, the Court stated a "balancing test" is employed "to determine whether a duty of reasonable care should be imposed in particular circumstances. *Id.* "'[U]ltimately, the determination of whether a duty should be imposed is made by weighing the various policy considerations and reaching a conclusion that the plaintiff's interests are, or are not, entitled to legal protection against the conduct of the defendant.'" *Rosenblatt v. Exxon*, 642 A.2d 180, 189 (Md. 1994).

10

The Red Leaf Defendants assert that they did not owe Gilbert a duty of care because they did not maintain any control over the premises, and that any duty owed to a customer of the Dollar General store is a duty of Dolgencorp, the lessee of the property. (ECF No. 7-1 at 2-3.) The terms of the lease state that Dolgencorp has the "exclusive use" of the premises for the duration of the lease. (Exh. A, ECF No. 7-3 ¶¶ 1.7, 2.1.) In response to this argument, the Plaintiff notes a specific condition of the lease which, she asserts, allows the Red Leaf Defendants as lessors to maintain some control over the premises. (ECF No. 11 at 4.) The lease provides that the tenants "covenants . . . to use the Premises in a careful, safe and proper manner." (Exh. A, ECF No. 7-3 ¶ 1.4.) According to the Plaintiff, "the lease agreement expressly reserves a modicum of control by the landlord regarding Dolgencorp's use of the premises." (ECF No. 11 at 4.) The Plaintiff argues that this provision, coupled with her allegations that all three Defendants were aware of the presence of her attacker on the premises in the days leading up to the assault, provided the Red Leaf Defendants with the sort of control that Maryland law has found in cases imposing a duty upon landlords to protect their tenants' guests. "At bottom, [the Red Leaf Defendants] could have required Dolgencorp to cure [its] default and bar the assailant from coming onto the premises." (ECF No. 11 at 5-6 (citing Exh. A, ECF No. 7-3 ¶ 14.1).)

The Red Leaf Defendants are not without potential defenses to this argument. They assert that they did not in fact have knowledge of the attacker's presence on the property. (ECF No. 14 (citing Exh. 1, ECF No. 7-2).) They also contend that even if they were aware of the attacker and Dolgencorp was in breach of the lease, they would have been required under the terms of the agreement to provide written notice of their tenant's breach and

provide the tenant with 30 days to cure the breach. (*Id.*) Yet, this Court returns to the standard for fraudulent joinder as articulated by the Fourth Circuit: the "no possibility" standard "heavily favors the [plaintiffs], who must show only a 'glimmer of hope' of succeeding against the non-diverse defendants." *Johnson*, 781 F.3d at 704 (quoting *Mayes*, 198 F.3d at 466). At this stage in the litigation, this Court must accept the facts as alleged by the Plaintiff as true, and the Plaintiff's Complaint alleges both knowledge of the Red Leaf Defendants with respect to the dangerous condition—the presence of the attacker on the premises—as well as some ability by the Defendants as lessors to act to abate that dangerous condition under an express covenant of the lease with Dolgencorp. Perhaps the Red Leaf Defendants were not in a position to immediately take control of the leased premises under the terms of their agreement with Dolgencorp, but they may have been within their rights to at least "threaten[ ] legal action," the course of action the *Matthews* court suggested the defendant-landlord could have taken in that case. *See Matthews*, 719 A.2d at 125.

Given that the "common thread" running throughout the cases in which landlords have been held liable for a defective or dangerous conditions is "the landlord's ability to exercise a degree of control over the defective or dangerous condition and to take steps to prevent injuries arising therefrom," *id.*, 719 A.2d at 125, and that the Plaintiff has alleged the existence of such circumstances in this case, there is certainly a "glimmer of hope" that the Plaintiff can succeed against the Red Leaf Defendants. "Fraudulent joinder is not shown simply because the action is likely to be dismissed against that defendant: '[The Court] do[es] not decide whether the plaintiff will actually or even probably prevail on the merits, but look[s] only for a *possibility* that he may do so.'" 2 Schwarzer, *et al.*, *Federal Civil Procedure Before Trial*

§ 2467 (quoting *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992) (emphasis added)).  Careful balancing of the policy considerations underlying the Maryland Court of Appeals' decisions in this area of the law and those present in this case could result in the Plaintiff's entitlement to legal protection against the Red Leaf Defendants' inaction.  *See Rosenblatt*, 642 A.2d at 189.  The burden remains on Gilbert to ultimately prove her claims against each of the Defendants, but this Court may not disregard the Maryland citizenship of the non-diverse Red Leaf Defendants.

## CONCLUSION

For the reasons stated above, the Red Leaf Defendants' Motion to Dismiss for Fraudulent Joinder (ECF No. 7) is DENIED.  As the Plaintiff asserts only state law claims against the Defendants in this case, this Court retains subject matter jurisdiction solely through the diversity jurisdiction of 28 U.S.C. § 1332.  As the Defendants did not satisfy the heavy burden of fraudulent joinder, the presence of the non-diverse Red Leaf Defendants destroys the complete diversity requirement by 28 U.S.C. § 1332.  This action is accordingly REMANDED to the Circuit Court for Baltimore City, Maryland.

A separate Order follows.

Dated: April 29, 2021

                                                                 _____/s/_____

                                                                 Richard D. Bennett
                                                                 United States District Judge